UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARL GLOWACKI,

        Plaintiff,

v.                              Case No:  8:16-cv-1057-T-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## OPINION AND ORDER

Plaintiff Carl Glowacki seeks judicial review of the denial of his claim for disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs, and the applicable law.   For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

### I.    Issues on Appeal[1]

Plaintiff raises three issues on appeal: (a) whether the Appeals Council ("AC") properly considered new medical evidence; (b) whether the Administrative Law Judge ("ALJ") properly weighed the opinion of Gary Moskovitz, M.D.; and (c) whether the ALJ properly considered Plaintiff's obesity.

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived.   *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

## II.    Procedural History and Summary of the ALJ Decision

On December 6, 2012, Plaintiff filed an application for a period of disability and DIB alleging that he became disabled and unable to work on March 3, 2010.    Tr. 79, 169-71.    Plaintiff alleged disability due to back pain, right and left shoulder pain, depression and anxiety.    Tr. 79.    Plaintiff's applications were denied initially and upon reconsideration.    Tr. 104-08, 111-15.    Plaintiff requested and received a hearing before ALJ Lisa B. Martin on March 20, 2014, during which the ALJ appeared via video teleconference.[2]    Tr. 42, 135-39.    Plaintiff, who was represented by counsel during the hearing, appeared and testified in person at the hearing.    Tr. 42.    A vocational expert ("VE") appeared and testified in person at the hearing.    *Id.*

On July 25, 2014, the ALJ issued a decision finding Plaintiff not disabled from March 3, 2010, through to the date of the decision.    Tr. 35.    At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, and had not engaged in substantial gainful activity since March 3, 2010.    Tr. 27.    At step two, the ALJ determined that Plaintiff has the following severe impairments: lumbar spine disorder status-post discectomy surgery, right shoulder disorder status-post surgery, a history of left shoulder disorder, sleep apnea, obesity, anxiety and depression.    *Id.*    At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."    Tr. 28.

_____

[2] The ALJ presided over the hearing from Falls Church, Virginia, and Plaintiff appeared in St. Petersburg, Florida.    Tr. 25, 42.

The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to perform a full range of light work except:

> [Plaintiff] must avoid climbing ladders, ropes, and scaffolding as well as crawling tasks and no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, and crouching. [Plaintiff] needs a sit-stand option with a change of position opportunity as often as hourly for up to one to two minutes. [Plaintiff] is further limited to only occasional overhead reaching tasks with the upper extremities. [Plaintiff] must avoid dangerous work hazards (including unprotected heights and exposed machinery) and extreme heat and humidity conditions. Because of pain and mental health symptoms preventing detailed decision making, [Plaintiff] is limited to routine, uninvolved tasks not requiring a fast assembly quota pace.

Tr. 29. Next, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 33. Considering Plaintiff's age, education, work experience and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and therefore concluded he was not disabled from March 3, 2010, through the date of the decision. Tr. 34-35.

Following the ALJ's decision, Plaintiff filed a request for review by the AC, which was denied on February 26, 2016. Tr. 1. Accordingly, the July 25, 2014 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on April 29, 2016. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Docs. 13, 14.

### III. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would

accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de*

*novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

IV.     **Discussion**

      *a. Whether the AC properly considered new medical evidence.*

Constantine G. Bouchlas, M.D., treated Plaintiff for his back and left leg pain from April 30, 2013 to April 9, 2014. Tr. 362-78, 479-88, 491-96. Relevant here are Dr. Bouchlas' treatment notes from January 27, 2014 and April 9, 2014. Tr. 479-85. On January 27, 2014, Plaintiff saw Dr. Bouchlas to review his MRI and discuss his pain management. Tr. 483. Plaintiff reported that since his last visit, he changed his primary care physicians and began seeing a psychiatrist. *Id.* Dr. Bouchlas noted that the result of Plaintiff's last urine screen test was appropriate, and he used hydrocodone[3] for breakthrough pain. *Id.* Dr. Bouchlas also indicated that Plaintiff had left shoulder surgery in 2000 and 2006 and right shoulder surgery in 2010 and 2011. *Id.* At this time, Plaintiff had various medical problems, such as cervical

---

    [3] Hydrocodone is a semisynthetic opioid analgesic. *Hydrocodone*, Dorland's Illustrated Medical Dictionary (30th Ed. 2003).

myofascial[4] pain and osteoarthrosis[5] hip.  *Id.*  Plaintiff was taking Zanaflex[6] and Hydrocodone-Acetaminophen.[7]  Tr. 484.

Dr. Bouchlas diagnosed Plaintiff with cervical myofascial pain, bilateral shoulder repair/revisions, facet syndrome, osteoarthrosis hip, post-procedural arthrodesis[8] status, thoracic or lumbosacral neuritis or radiculitis,[9] and spinal stenosis of the lumbar region.  *Id.*  With regard to his cervical pain, Plaintiff stated to Dr. Bouchlas that the medications and treatment had improved the quality of his life and physical functioning.  *Id.*  Dr. Bouchlas noted that the current treatment regimen was necessary to decrease Plaintiff's pain symptoms and to improve the quality of Plaintiff's life, the ability to function and sleep and mood symptoms.  *Id.*  Nonetheless, the doctor indicated that Plaintiff had non-malignant pain syndrome not adequately controlled by or responded to other medications, therapy and interventions, which necessitated the use of opioid analgesics for over seventy-two

---

[4] Cervical myofascial pain indicates pain pertaining to the fascia surrounding and associated with neck muscle tissue.  *Cervical*, Dorland's Illustrated Medical Dictionary (30th Ed. 2003); *myofascial*, Dorland's Illustrated Medical Dictionary (30th Ed. 2003).

[5] Osteoarthritis means a non-inflammatory degenerative joint disease. *Osteoarthritis*, Dorland's Illustrated Medical Dictionary (30th Ed. 2003).

[6] Zanaflex is a trademark for a preparation of tizanidine hydrochloride, which is used as a short-acting agent to manage the increased muscle tone associated with spasticity. *Zanaflex*, Dorland's Illustrated Medical Dictionary (30th Ed. 2003); *tizanidine hydrochloride*, Dorland's Illustrated Medical Dictionary (30th Ed. 2003).

[7] Acetaminophen has analgesic effects similar to those of aspirin and reduces or prevents fever.  *Acetaminophen*, Dorland's Illustrated Medical Dictionary (30th Ed. 2003).

[8] Arthrodesis is the surgical fixation of a joint by a procedure designed to accomplish fusion of the joint surfaces by promoting the proliferation of bone cells.  *Arthrodesis*, Dorland's Illustrated Medical Dictionary (30th Ed. 2003).

[9] Radiculitis indicates inflammation of the root of a spinal nerve.  *Radiculitis*, Dorland's Illustrated Medical Dictionary (30th Ed. 2003).

(72) hours. *Id.* Dr. Bouchlas instructed Plaintiff that the use of narcotics could be addicting and sedating. *Id.* Dr. Bouchlas asked Plaintiff to follow up in three months or sooner if symptoms progressed. *Id.*

With regard to Plaintiff's spinal stenosis of the lumbar region, Dr. Bouchlas included an overview of this disease as follows:

> Facet joints tend to get larger as they degenerate. This process is the body's attempt to decrease the stress per unit area across a degenerated joint. Unfortunately, as the joint enlarges, it can place pressure on the nerves as they exit the spine. Standing upright further decreases the space available for the nerve roots, and can block the outflow of blood from around the nerve. Congested blood then irritates the nerve and the pain travels into the legs. Generally, patients with spinal stenosis are comfortable if they are sitting, but have more pain down their legs when they walk and the pain increases with more walking ("neurogenic claudication"). Walking while leaning over a supporting object (such as a walker or shopping cart) can help ease the pain, and sitting down will cause the pain to recede.

*Id.* After further noting treatment options for this disease, Dr. Bouchlas indicated, "By: Peter F. Ullrich, Jr., MD September 8, 1999 Updated February 28, 2001[;] Adapted from www.spine-health.com[.] The information is intended to inform and educate and is not a replacement for medical evaluation, advice, diagnosis or treatment by a healthcare professional." Tr. 484-85. Dr. Bouchlas included the identical overview of lumbar spinal stenosis in his treatment notes from April 9, 2014. Tr. 481.

In addition, Dr. Bouchlas reviewed Plaintiff's MRI and opined that although Plaintiff had a loss of lordosis[10] and mild osteophyte[11] complexes, there was no significant stenosis. Tr. 485. The doctor thought that Plaintiff's cervical symptoms were chronic spasm, and Plaintiff did not need to see a surgeon for his cervical spine. *Id.* Nonetheless, Plaintiff wanted to obtain an opinion regarding his lumbar spine and expressed his wish to see another physician. *Id.* Dr. Bouchlas referred Plaintiff to physical therapy for his cervical spine and continued his pain management. *Id.*

On April 9, 2014, Plaintiff returned to Dr. Bouchlas for his pain management. Tr. 479. Plaintiff reported that he had severe spasm, causing him to almost fall. *Id.* As a result, Plaintiff asked Dr. Bouchlas if a cane would be appropriate for him. *Id.* Although he further reported having significant pain in his neck and lower back, he also stated that he was unable to get a consultation regarding his need for surgery. *Id.* Plaintiff also was unable to get therapy because he had to take care of his children. *Id.* Regardless, he noted that his wife was planning to stop working soon, which should give him more time to pursue treatment. *Id.*

Plaintiff's physical exam during this visit was unremarkable; he was alert and was not in acute distress. Tr. 480. He was oriented to person, time and place and was well nourished and developed. *Id.* Although he tended to lean forward and to

---

[10] Lordosis indicates a bodily concavity in the curvature of the lumbar and cervical spine as viewed from the side. *Lordosis*, Dorland's Illustrated Medical Dictionary (30th Ed. 2003).

[11] Osteophyte means a bony outgrowth. *Osteophyte*, Dorland's Illustrated Medical Dictionary (30th Ed. 2003).

the left, his gait was normal. *Id.* Plaintiff had normal skin and bilaterally normal pulses. *Id.* He also did not have any edema bilaterally and had motor strength of 5/5 throughout his lower extremities. *Id.* His reflexes were normal and symmetric throughout his extremities, and he had the normal sensory throughout his lower extremities. *Id.* Plaintiff's neurological condition was overall normal. *Id.*

On the other hand, Plaintiff had moderate tenderness and bilateral spasm in his cervical spine. *Id.* Furthermore, in his cervical spine, he had restricted flexion, restricted and painful extension and painful bilateral rotation. *Id.* With regard to his lumbosacral spine, Plaintiff had moderate tenderness, bilateral spasm and restricted and painful restriction and extension. *Id.* Nonetheless, Plaintiff tested negative to the Fortin Finger Test, indicating that he did not have any sacroiliac pain or joint dysfunction. *Id.* He also was able to raise his two legs straight. *Id.* Furthermore, he had full range of motion in his hips, although he had painful internal and external ranges of motion in his left hip. *Id.* His hip joint's functioning was normal. *Id.*

Dr. Bouchlas' diagnosis remained the same from the last visit, and he included the same overview of lumbar spinal stenosis in his treatment notes. Tr. 481. At this time, Plaintiff was only taking Hydrococodone-Acetaminophen, and Plaintiff again stated that the medications and treatment improved the quality of his life and physical functioning. *Id.* Dr. Bouchlas noted that the current treatment regimen was necessary to decrease Plaintiff's pain symptoms and to improve the quality of his life, the ability to function and his sleep and mood symptoms. *Id.* Dr. Bouchlas

further opined that Plaintiff could consider long acting opiate analgesics for pain. *Id.* After discussing with Plaintiff, the doctor decided to give Plaintiff a prescription for a straight cane, update his urine drug screen test, and continue him with his pain management. *Id.* Plaintiff also promised to Dr. Bouchlas that he would let the doctor know when he is able to get therapy. *Id.* Dr. Bouchlas advised Plaintiff to return in one month. *Id.*

The ALJ issued her decision without having had an opportunity to consider these treatment notes from January 27, 2014 and April 9, 2014 because Dr. Bouchlas' treatment notes only from April 19, 2013 to July 25, 2013 were before the ALJ. Tr. 31-32, 479-85. During the hearing before the ALJ, Plaintiff's counsel acknowledged that the ALJ did not have Dr. Bouchlas' full medical records, and stated that Plaintiff was waiting to receive the latest one. Tr. 59-60. Plaintiff submitted the updated record, Dr. Bouchlas' treatment notes from August 29, 2013 to April 9, 2014, along with other evidence, to the AC when he requested the AC's review of the ALJ's decision. Tr. 5. After considering Dr. Bouchlas' updated treatment notes as well as other newly submitted evidence, the AC denied Plaintiff's request for review. Tr. 1-2. The AC held that the information supplied by Plaintiff did not provide a basis for changing the ALJ's decision. Tr. 2.

Plaintiff refers to Dr. Bouchlas' overview of lumbar spinal stenosis from January 27, 2014 and April 9, 2014 and argues that the AC did not properly consider or evaluate this description. Doc. 18 at 6; Tr. 481, 484. The Commissioner responds

that Plaintiff's argument is without merit because Dr. Bouchlas' overview is not a medical opinion, and the AC properly considered it regardless. Doc. 22 at 6-7.

The Court finds that the AC properly considered Dr. Bouchlas' overview. The Eleventh Circuit has held, "[the AC] is not required to make specific findings of fact when it denies review. It need only 'consider the additional evidence' that is new, material, and chronologically relevant." *Parks ex rel. D.P. v. Comm'r, Soc. Sec. of Admin.*, 783 F.3d 847, 852 (11th Cir. 2015) (citation omitted). The Eleventh Circuit found that the "[AC] was not required to do more," if the "[AC] stated that it considered the new evidence that [the plaintiff] submitted, and the [AC] added the evidence to the record." *Id.*

Here, the AC expressly noted that it considered Plaintiff's newly submitted evidence, and enumerated each in its decision. Tr. 2. One piece of evidence listed in the AC's decision are "treatment notes from the Florida Spine Institute dated August 29, 2013 through April 29, 2014," part of which are Dr. Bouchlas' treatments notes from August 29, 2013 to April 9, 2014. Tr. 2, 479-96. The AC also added this evidence as well as others to the record. Tr. 6-7. Because the AC considered Plaintiff's new evidence and added them to the record, the Court finds that the AC was not required to do more. Tr. 1-7; *see Parks ex rel. D.P.*, 783 F.3d at 852.

Furthermore, the Court finds that the AC need not consider Dr. Bouchlas' overview of lumbar spinal stenosis because this evidence is not new or material. "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of

benefits erroneous." *Ingram*, 496 F.3d at 1262 (citation omitted). Although the Appeals Council has the discretion not to review the ALJ's denial of benefits, *see* 20 C.F.R. § 416.1470(b) (2014), it "must consider new, material, and chronologically relevant evidence" that the claimant submits. *Ingram,* 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b) (2014); *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015).

Evidence is new and noncumulative if it "existed prior to the ALJ's hearing, but was not discovered until after the ALJ hearing." *Reynolds v. Comm'r of Soc. Sec.*, 457 F. App'x 850, 853 (11th Cir. 2012) (citing *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001); *Hyde v. Bowen*, 823 F.2d 456, 459 n.4 (11th Cir. 1987)). Evidence is material when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (citation omitted); *see* 42 U.S.C. 405(g).

Here, the Court finds that Dr. Bouchlas' treatment notes from August 29, 2013 to January 27, 2014 are not new or noncumulative. *See Reynolds*, 457 F. App'x at 853; Tr. 483-96. These treatment notes existed prior to the ALJ's hearing on March 20, 2014. Tr. 40, 483-96. Plaintiff's counsel was aware of them and acknowledged during the hearing that the ALJ did not have them. Tr. 59-60. Although the ALJ allowed Plaintiff to supply the missing treatment notes within ten (10) days from the date of the hearing, Plaintiff did not supply these treatment notes to the ALJ for reasons not explained to this Court. Tr. 7, 77; Doc. 18 at 4-6.

Furthermore, Dr. Bouchlas' overview of lumbar spinal stenosis discussed by Plaintiff is not material because it would not change the administrative result. Tr. 481, 484-85; *see Caulder*, 791 F.2d at 877. The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Treatment notes from acceptable medical sources that include a description of the claimant's symptoms, a diagnosis, and a judgment about the severity of his impairments are medical opinions. *Winschel*, 631 F.3d at 1178-79.

Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).

Here, as the Commissioner correctly argues, Dr. Bouchlas' overview of lumbar spinal stenosis is not a medical opinion, but rather than an informational statement cited from another source. Doc. 22 at 6; Tr. 481, 484-85. The treatment notes clearly state that "[t]he information is intended to inform and educate and is not a replacement for medical evaluation, advice, diagnosis or treatment by a healthcare professional." Tr. 481, 485. Accordingly, contrary to Plaintiff's argument, Dr. Bouchlas' overview is not entitled substantial weight under the regulations because it is not Dr. Bouchlas' medical opinion. Tr. 481, 484-85; *see Castle*, 557 F. App'x at 854; *Lewis*, 125 F.3d at 1440. As a result, the Court finds that Dr. Bouchlas' overview of lumbar spinal stenosis would not change the administrative result. Tr. 481, 484-85; *see Caulder*, 791 F.2d at 877 (citation omitted); *Washington*, 806 F.3d at 1321 (citing *Hyde*, 823 F.2d at 459). Based on the above findings, the Court holds that the AC properly considered the new evidence submitted by Plaintiff, including Dr. Bouchlas' updated treatment notes. Tr. 2.

>    b.  *Whether the ALJ properly weighed the opinion of Gary Moskovitz, M.D.*

Gary Moskovitz, M.D., a spine surgeon, treated Plaintiff from October 11, 2010 to January 30, 2011 for Plaintiff's lower back pain. Tr. 286-98. On October 11, 2010, Plaintiff saw Dr. Moskovitz because of his involvement in a car accident on March 3, 2010. Tr. 296. Plaintiff reported that after the car accident, he began experiencing lower back pain, which became more severe. *Id.* He noted that he continued to have persistent lower back pain, which radiated into bilateral hips, although pain was greater in his right lower extremities than in left ones. *Id.*

Plaintiff indicated that his pain was associated with numbness and tingling in the right leg. *Id.* He reported that his pain became worse with prolonged sitting, ambulating and lifting. *Id.* He gave his pain a score of eight to nine on a scale of ten. *Id.* Plaintiff denied any history of lower back problems prior to the car accident. *Id.*

Dr. Moskovitz noted that Plaintiff was previously evaluated at Mease Dunedin Hospital and received treatment at Tampa Bay Orthopedics. *Id.* Plaintiff also was evaluated by another physician, had a trial of physical therapy, saw a pain management specialist and had several injections, which only brought temporary improvement. *Id.* Furthermore, Plaintiff received several treatments of radiofrequency ablation. *Id.* He was then taking two medications. *Id.* Nonetheless, Plaintiff continued to have persistent symptoms. *Id.*

Dr. Moskovitz's examination of Plaintiff's lumbar spine revealed that Plaintiff had mildly decreased range of motion in the lumbar spine and tenderness at the extremes. Tr. 297. Plaintiff also had paralumbar tenderness to palpation and an increased paralumbar muscle tone. *Id.* He had a slightly positive straight leg raise at approximately eighty (80) degrees on the right side. *Id.* Furthermore, Plaintiff's right ankle jerk reflex was mildly decreased. *Id.* Dr. Moskovitz examined Plaintiff's MRI dated March 19, 2010 and opined that he had central L5-S1 disk herniation with a disk tear. *Id.* Dr. Moskovitz opined that Plaintiff could either continue with his previous treatment with pain management and learn to live with

his symptoms, or surgically remove herniated disk material in his lower back.   *Id.*
Plaintiff wished to undergo surgery.   *Id.*

On November 8, 2010, Plaintiff returned to Dr. Moskovitz to prepare for his upcoming back surgery.   Tr. 294.   He continued to have a marked amount of lower back pain, which radiated into his lower extremities.   *Id.*   Plaintiff's physical examination during this visit was unremarkable.   Tr. 294-95.   On November 11, 2010, Plaintiff underwent back surgery.   Tr. 291-93.   On November 16, 2010, Plaintiff expressed that he was happy with the improvement of his symptoms after the surgery.   Tr. 290.   Dr. Moskovitz opined that Plaintiff's lower back incision was dry and intact and did not exhibit any signs of infection.   *Id.*   On November 19, 2010, the doctor spoke with Plaintiff on the phone when Plaintiff called to refill his pain medication.   Tr. 289.

On January 3, 2011, Plaintiff returned to Dr. Moskovitz, who opined that Plaintiff's incision was "well healed."   Tr. 288.   Plaintiff's pain was better than it was prior to the surgery, although he continued to experience some residual lower back symptoms.   *Id.*   Dr. Moskovitz opined that Plaintiff was likely to continue to have persistent residual lower back symptoms in the future.   *Id.*   The doctor still noted that Plaintiff was currently at "surgical maximum medical improvement," and discussed various activity precautions and restrictions with Plaintiff.   *Id.*

On January 30, 2011, Dr. Moskovitz provided a letter regarding Plaintiff.   Tr. 286-87.   In addition to reiterating his previous findings, Dr. Moskovitz opined that the car accident caused Plaintiff's disk herniation, "a permanent injury with

permanent impairment." Tr. 287. The doctor further indicated that although Plaintiff's lower back symptoms improved after the surgery, he continued to have them and was likely to experience persistent residual lower back symptoms. *Id.* Dr. Moskovitz rated Plaintiff's impairment as 18% impairment of the whole person and within the lumbar category of three to four pursuant to the Diagnosis Related Estimates ("DRE").[12] *Id.* Dr. Moskovitz further opined that Plaintiff would "likely have impairment of certain activities of living and work, especially activities that involve repetitive lifting over 30-40 pounds, and repetitive bending, turning and twisting. This will likely impair [Plaintiff's] work and recreational activities that involve above limitations." *Id.*

The ALJ discussed Dr. Moskovitz's treatment notes and letter dated January 30, 2011. Tr. 31. She accorded significant weight to Dr. Moskovitz's opinion because his opinion is "consistent with the fairly benign record after [Plaintiff's] surgery." Tr. 32. The ALJ specifically noted that the surgery appeared to have improved Plaintiff's symptoms because Plaintiff did not receive treatment again until April 2012, which was over one year after his surgery. *Id.* She also found that Dr. Moskovitz's opinion is consistent with Plaintiff's testimony that he is limited to lifting up to twenty-five (25) pounds past his waist. Tr. 32, 50.

---

[12] DRE is the method to evaluate an individual who has had a distinct injury. DRE III indicates unresolved, verified radiculopathy and spine surgery of level one. DRE IV notes bilateral or multi-level radiculopathy. State of California, Department of Industrial Relations, https://www.dir.ca.gov/dwc/educonf20/DEU/RatingSpineImpairments.pdf (last visited August 4, 2017).

Plaintiff argues that Dr. Moskovitz's opinion is not supported by substantial evidence. Doc. 18 at 8. Furthermore, according to Plaintiff, Dr. Moskovitz's opinion that Plaintiff would likely experience certain restrictions as a result of his back surgery is speculation and is not supported by the actual outcome of the surgery. *Id.* at 9. The Commissioner responds that the ALJ properly evaluated Dr. Moskovitz's opinion because this opinion is supported by substantial evidence. Doc. 22 at 7-9.

As noted, under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle*, 557 F. App'x at 854 (citing *Phillips*, 357 F.3d at 1240); *Lewis*, 125 F.3d at 1440; *Sabo*, 955 F. Supp. at 1462. "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was

conclusory or inconsistent with the doctor's own medical records.'" *Winschel,* 631 F.3d at 1179 (quoting *Phillips,* 357 F.3d at 1241).

Contrary to Plaintiff's argument that Dr. Moskovitz's opinion is speculation, the Court finds that this opinion is a medical opinion.   In support of his argument, Plaintiff cites to *Haag v. Barnhart,* which states that "[a]n ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement. He is not free to base his decision on such unstated reasons or hunches." 333 F. Supp. 2d 1210, 1220 (N.D. Ala. 2004).   This proposition stems from the opinion that "as a hearing officer [an ALJ] may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional." *Marbury v. Sullivan,* 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, concurring).   These opinions address an issue not relevant here because they disapproved the ALJ's substitution of his own hunch in place of a medical professional's opinion, which is neither an issue Plaintiff raised nor what the ALJ did here.   Doc. 18 at 7-9; Tr. 32; *see Haag,* 333 F. Supp. 2d at 1220; *Marbury,* 957 F.2d at 840-41.

Instead, Dr. Moskovitz, not the ALJ, opined that Plaintiff's back injury would restrict Plaintiff's certain activities, such as repetitive lifting over thirty (30) to forty (40) pounds.   Tr. 287.   This opinion was based on "medically acceptable clinical and laboratory diagnostic techniques," including Dr. Moskovitz's treatment of Plaintiff and Plaintiff's surgery and MRI.   Tr. 286-287; 20. C.F.R. § 404.1527(a)(1).   As a result, Dr. Moskovitz's opinion is not a hunch or speculation, but a medical opinion

that reflects his judgments "about the nature and severity of [Plaintiff's] impairment(s), including [Plaintiff's] symptoms, diagnosis and prognosis, what [Plaintiff] can still do despite impairment(s), and [Plaintiff's] physical or mental restriction."  20 C.F.R. § 404.1527(a)(2).

Furthermore, the Court finds that the ALJ appropriately gave substantial weight to Dr. Moskovitz's opinion because she properly did not find any good cause to discredit this opinion.  Tr. 32; *see Castle*, 557 F. App'x at 854 (citing *Phillips*, 357 F.3d at 1240); *Lewis*, 125 F.3d at 1440; *Sabo*, 955 F. Supp. at 1462.  After analyzing Plaintiff's relevant medical evidence, the ALJ determined that Dr. Moskovitz's opinion is consistent with Plaintiff's testimony and "the fairly benign record after [Plaintiff's] surgery," and even "more consistent with the record th[a]n the recent opinions of [another physician.]"  *Id.*  The ALJ accurately noted various medical evidence in support of her findings, including that after his back surgery with Dr. Moskovitz, Plaintiff did not seek treatment again until April 2012, one year after the surgery.  Tr. 31, 291-93, 309-13.  She also discussed that even on April 17, 2012, when Plaintiff saw his primary care physician, Dan Nosek, M.D., Plaintiff's main complaints were his anxiety and depression.  Tr. 31, 309-13.  Although Plaintiff complained of radiculopathy from the lumbar disk disease during this visit, his physical examination did not reveal any lumbar spine tenderness.  Tr. 31, 309, 311.

Plaintiff attempts to rebut the ALJ's findings by presenting contradictory evidence.  Doc. 18 at 8-9.  The Court, however, will not overturn the ALJ's decision simply because, as Plaintiff argues, conflicting medical evidence exists, and the ALJ

resolved the conflicts in the evidence of record. *Id.*; *Lacina*, 606 F. App'x at 525 (citing *Grant*, 445 F.2d at 656) ("It is 'solely the province of the Commissioner' to resolve conflicts in the evidence and assess the credibility of witnesses."). The ALJ's assessment of conflicting evidence was within her discretion because "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (citing *Richardson*, 402 U.S. at 389-409). As a result, the Court finds that the ALJ properly accorded significant weight to Dr. Moskovitz's opinion. Tr. 32.

### c. Whether the ALJ properly considered Plaintiff's obesity

Plaintiff argues that he weighs over 300 pounds, and the ALJ evaluated his obesity in parts of her decision. Doc. 18 at 9-10; Tr. 27, 29. Plaintiff asserts, however, that the ALJ erred by not considering his obesity when she assessed his RFC. Doc. 18 at 10-11. The Commissioner responds that Plaintiff failed to prove what limitations his obesity imposed on his ability to work. Doc. 22 at 9-10.

As the Commissioner accurately argues, it is Plaintiff's burden to establish that his obesity affected his ability to perform basic work activities. Doc. 22 at 9; *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."); *see McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be

measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"). Furthermore, the ALJ "need not scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant." *East v. Barnhart*, 197 F. App'x 899, 902 (11th Cir. 2006).

Here, the ALJ need not consider Plaintiff's obesity because Plaintiff did not identify obesity as an impairment on his paperwork and during the hearing. Tr. 44-79; *see id.* Plaintiff did not allege obesity as a disabling impairment on his initial paperwork. Tr. 79, 87. During the hearing, Plaintiff did not establish or discuss at all how obesity impaired his functioning. Tr. 44-78. Instead, Plaintiff testified that he weighed about 290 pounds at this time and was "a little more functional, a little bit more able to do things" when he weighed about 210 pounds prior to the car accident of March 2010. Tr. 56-57. Similarly, although the ALJ determined Plaintiff's obesity as a severe impairment, the ALJ noted that no physicians found it to be disabling. Tr. 27, 29.

Plaintiff argues on appeal that medical evidence shows his obesity limits his ability to function. Doc. 18 at 11. In support, he refers to the opinion of Dr. Nosek, who opined on April 17, 2012 that:

> Weight is a big problem for [Plaintiff]. I referred [him to] Dr. Franco. [Plaintiff] also needs to increase his exercise. I recommended joining the long center since it is near his house and he could use the pool. We will eventually refer to nutritionist, but currently and try to get his more pressing needs under control. His orthopedic problems present

significant hindrance in this situation. He is having a lot of problems
with back pain and shoulder pain.

Tr. 311.   Dr. Nosek further found that Plaintiff was morbidly obese and gained his
weight back, although he once lost 30 pounds after joining a weight loss program and
taking appetite suppressants.   Tr. 309.   The doctor indicated that Plaintiff stopped
taking appetite suppressants because of his fluctuating blood pressure, and was
limited in exercising because of his severe orthopedic problems.   *Id.*

As the ALJ accurately found, however, Dr. Nosek did not opine that Plaintiff's
obesity imposed any limitations on his ability to work.   Tr. 29.   On April 17, 2012,
Dr. Nosek did not identify how Plaintiff's obesity impacted his ability to function,
although the doctor found that obesity was a "big problem."   Tr. 309-13.   On May
18, 2012, Dr. Nosek indicated that Plaintiff lost twelve pounds since his last visit in
April 2012.   Tr. 307.   On July 16, 2012, when Plaintiff returned to Dr. Nosek, the
doctor noted that Plaintiff gained ten pounds because of his poor compliance with
diet.   Tr. 304.   Although Dr. Nosek acknowledged that Plaintiff was obese and was
strongly encouraged to control his diet, Dr. Nosek indicated that Plaintiff needed to
"get over his acute illness first."   Tr. 305.   Contrary to Plaintiff's argument, Dr.
Nosek's opinion does not provide any medical basis for the disabling effects of
Plaintiff's obesity.   Doc. 18 at 11.

Based on the above findings, the Court finds that Plaintiff did not meet his
burden because he neither identified obesity as an impairment on his paperwork and
during the hearing before the ALJ nor presents any medical evidence to show the
disabling effects of his obesity.   Doc. 18 at 9-11; *see Wind*, 133 F. App'x at 690;

*McCruter*, 791 F.2d at 1547; *East*, 197 F. App'x at 902. As a result, the Court concludes that the ALJ did not err by not discussing Plaintiff's obesity in assessing his RFC. Tr. 29-33.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **AFFIRMED**.

2.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 23rd day of August, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record